UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Vanessa Obeng-Myers, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | Civil Action H-18-4459 | |
| § | | |
| Nancy A. Berryhill, § | | |
| Acting Commissioner of the Social § | | |
| Security Administration, § | | |
| *Defendant.* § | | |

# MEMORANDUM AND ORDER

Plaintiff Vanessa Obeng-Myers appeals the Social Security Administration Commissioner's final decision denying her application for social security benefits. (D.E. 1.) Pending before the court are Plaintiff's Motion for Summary Judgment (D.E. 10) and Defendant's Motion for Summary Judgment. (D.E. 11.) Having considered the motions, filings, and applicable law, the court grants Plaintiff's motion, denies Defendant's motion, and remands the case to the Commissioner for further proceedings.

## 1. Procedural Posture

Obeng-Myers applied for disability insurance benefits on June 5, 2015. (Tr. 224.) She claimed that she became disabled on January 1, 2015, due to back problems and depression. (Tr. 224, 265.) In her application, Obeng-Myers stated that she was born in 1959. (Tr. 224.) She previously worked as a home health

provider, a collection clerk, a truck driver, and a courier. (Tr. 74–75, 266, 285.) The Social Security Administration denied Obeng-Myers's disability application on September 9, 2015. (Tr. 147–53.) Obeng-Myers sought reconsideration on October 21, 2015. (Tr. 154–56.) That request was denied on January 22, 2016. (Tr. 159–62.) Obeng-Myers requested a hearing.

Administrative Law Judge (ALJ) Ross Stubblefield held a hearing on September 11, 2017, in Houston, Texas. (Tr. 52–81.) The ALJ issued a decision on September 25, 2017, finding that Obeng-Myers was not disabled. (Tr. 33–47.) The Appeals Council denied Obeng-Myers's request for review on September 12, 2018. (Tr. 1–4.) Obeng-Myers filed her complaint in federal court on November 28, 2018, to appeal the ALJ's decision. (D.E. 1.)

## 2. Legal Standards

### A. Five–Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2017). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ determines whether any of the claimant's impairments are severe. 20 C.F.R. § 404.1520(c) (2017). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). A person who does not have a severe impairment is not disabled. *Wren*, 925 F.2d at 125.

The ALJ next determines, at step three, if the claimant's severe impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d) (2017); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2017) (Listing). If all the criteria

of a Listing are met, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2017).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e) (2017). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform their past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f) (2017). If not, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2017).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled.

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and

whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Hearing

At the hearing on September 11, 2017, the ALJ admitted medical evidence into the record without objection and heard testimony from Obeng-Myers and a vocational expert (VE). (Tr. 54–81.)

Obeng-Myers testified about her work-history, medical history, living situation, and familial relationships. (Tr. 55–73.) The VE testified that an individual with Obeng-Myers's same age, education, work experience, and RFC could perform her past work as a home health aide, truck driver, or courier. (Tr. 47, 74–76.) According to the VE's testimony, Obeng-Myers's primary past work as a collection clerk was considered "skilled" work under the DOT and was thus not available under the hypothetical. (Tr. 75.)

The ALJ questioned the VE about types of work that Obeng-Myers could perform using hypothetical limitations. (Tr. 75–79.) Each of these hypotheticals

5

included the ability to "frequently" perform gross and fine manipulation. *Id.* Obeng-Myers's attorney asked the VE if a limitation to only "occasional" manipulation would prohibit someone from working as a collection agent and the VE testified that it would. (Tr. 79.) The VE did not offer any further testimony about the work available to a person with Obeng-Myers's RFC with an additional limitation to "occasional" gross and fine manipulation.

The ALJ issued his decision on September 25, 2017, finding that Obeng-Myers could perform her past work as a home health provider, a truck driver, and a courier. (Tr. 47.) The ALJ therefore found that Obeng-Myers was not disabled. *Id.*

### 4. Analysis

The ALJ correctly found that Obeng-Myers had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2015, and that Obeng-Myers had the following severe impairments: depression, degenerative changes of the cervical spine and thoracic spine, back pain due to muscle strain, and mild, decreased strength in the right hand caused by a prior cerebrovascular accident. (Tr. 39.) The ALJ also found that Obeng-Myers's combination of impairments did not meet or medically equal the severity of any impairment defined in the Listings. (Tr. 40–42.) The court's independent review of the record reveals that substantial evidence supports the ALJ's findings at steps one through three.

Before turning to the final two steps of the analysis, the ALJ determined that Obeng-Myers had the following RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with an ability to lift and carry 50 pounds occasionally and 25 pounds frequently. She is limited to frequent gross manipulation and fine manipulation with the right extremity. Mentally, the claimant is limited to detailed but not complex work.

(Tr. 42.) Obeng-Myers argues that substantial evidence does not support the ALJ's RFC determination. (D.E. 10 at 5, 10, 13.) Specifically, she argues that there is not substantial evidence to support the finding that she could lift or carry twenty-five to fifty pounds as is required for "medium" work under 20 C.F.R. § 404.1567(c). (D.E. 10 at 10); *cf.* 20 C.F.R. § 404.1567(c) (2017). She also argues that there is not substantial evidence to support the finding that she can "frequently" perform gross and fine manipulation with her right hand. (D.E. 10 at 10, 13–14.) The court agrees.

In determining RFC, the ALJ considered, among other records, treatment notes from August 2014 through May 2016, a physical consultative examination, a mental consultative examination, and the State Agency physicians' reports. (Tr. 42–46.) He also considered Obeng-Myers's testimony. *Id.*

The treatment notes considered included records from Memorial Hermann Southwest and Injury Rehab Clinic following a 2014 car accident and records from Healthcare for the Homeless dated December 2014 through May 2016. (Tr. 42–45,

7

446–506, 532–693.) The latter records included physical and mental examination findings and notes about Obeng-Myers's presenting complaints, medical history, and medications. (Tr. 532–693.) All sixteen months of treatment notes from Healthcare for the Homeless state in cursory fashion that Obeng-Myers had normal range of motion and no musculoskeletal abnormalities. (Tr. 43, 45, 536, 548, 561, 569, 575, 581, 587, 597, 603, 609, 622, 628, 634, 640, 653, 659, 665, 671, 681.) A July 2015 physical examination showed that Obeng-Myers had decreased strength in all of her muscle groups. (Tr. 43, 542, 622.) There is no evidence that her muscle strength was later retested. The ALJ does not point to any notations that mention Obeng-Myers's ability to lift or perform gross or fine manipulation with her right hand.

The consultative examination report of Dr. Phong Luu showed that Obeng-Myers had an antalgic gait. (Tr. 43, 525.) That is, her gait was unnaturally adjusted to compensate for pain. She was nevertheless able to walk across the room and get around without difficulty. (Tr. 43, 525–26.) Dr. Luu also reported that Obeng-Myers had a mild decrease in strength on her right side due to a prior stroke and did "not have good fine finger control." (Tr. 525–26.) He noted Obeng-Myers's complaints that she could write, hold a coffee cup, and lift three pounds, but could not use a broom, open a jar top, or button her own shirt. (Tr. 525.)

At the initial level, the State Agency physician's opinion considered the consultative examination reports, Healthcare for the Homeless records from December 2014 through June 2015, and other records. (Tr. 83–84, 86, 146, 153.) At the reconsideration level, the State Agency physician's opinion considered the above-mentioned records, additional Healthcare for the Homeless records through October 15, 2015, and reconsideration reports. (Tr. 113–15, 157, 532–33.) The State Agency physicians found that Obeng-Myers could "occasionally" lift up to twenty pounds and could "frequently" lift up to ten pounds. (Tr. 89, 119.) They both opined that Obeng-Myers could probably stand, walk, or sit about six out of eight hours. *Id.* These physicians found that Obeng-Myers had postural limitations due to muscle strain and spasms, decreased range of motion, and an antalgic gait. (Tr. 90, 120.) They also opined that Obeng-Myers had manipulative limitations in her right hand. *Id.* Based on their findings, they found Obeng-Myers's ability to handle and finger with her right hand was limited to only "occasional" right-hand manipulation. *Id.* That limitation was "due to hand weakness and poor fine manipulation." *Id.*

The ALJ acknowledged the State Agency physicians' opinions but determined that "newer medical evidence in [the record] show[ed] no musculoskeletal problems and [that Obeng-Myers was] on no pain medication. Thus, she [was] not as limited as opined by these State Agency reviewing

9

physicians." (Tr. 45.) This conclusion was in error because the "newer" evidence cited was cumulative of evidence already before the State Agency physicians and did not directly pertain to the substance of the State Agency physicians' opinions.

A brief discussion of the "newer" medical evidence is required at this point. At the reconsideration level, the State Agency physician had before him the treatment notes from Healthcare for the Homeless dated June 10, 2015, through October 15, 2015. (Tr. 113–15, 122–23, 532–65.) These records were marked as Exhibit 7F and are found in the administrative record at pages 532–565. The ALJ states that "newer medical evidence" is found in Exhibit 8F. (Tr. 45.) He does not provide page numbers for reference. The only medical evidence that is "newer" than the records considered at the State Agency level are the records from office visits with Nurse Practitioner Adonica Franklin from December 2015 through May 2016. (Tr. 567–601.)

The "newer medical evidence" in Exhibit 8F was cumulative of the treatment notes found in Exhibit 7F. Every time Nurse Practitioner Franklin saw Obeng-Myers, she noted that Obeng-Myers had normal range of motion and was "negative" for musculoskeletal symptoms. (Tr. 536, 548, 561, 569, 575, 581, 587, 597, 603, 609, 628, 634, 640, 653, 659, 665, 671, 681.) These treatment records also noted that Obeng-Myers was not prescribed any pain medication. (Tr. 538–39, 544–45, 550–51, 557, 559, 563–64, 571–72, 577–78, 583–84, 593, 595, 599–600,

605–06, 611–12, 618, 620, 624–25, 630–31, 636–37, 642–43, 650–51, 655–56, 661–62, 667–68, 677–78, 687, 689.) This is true of the records in both Exhibits 7F and 8F. The only thing "new" about the treatment records cited by the ALJ is the period of time covered. Franklin made the same observations of Obeng-Myers's physical symptoms throughout the time she treated her.

Moreover, the evidence in Exhibit 8F does not address Obeng-Myers's ability to lift, her antalgic gait, or her ability to manipulate or finger with her right hand. This is not surprising given that the reported purpose of Obeng-Myers's visits was to address her psychological symptoms and medications. (Tr. 568, 574, 580, 586, 596, 602, 608, 614, 621, 627, 633, 639, 645, 652, 658, 664, 670, 680.)

In discounting the State Agency physicians' opinions, the ALJ merely pointed out that Exhibit 8F notes that Obeng-Myers had "no musculoskeletal problems and she [was] on no pain medication." (Tr. 45.) The ALJ did not explain how he interpreted Franklin's cursory statements as evidence that Obeng-Myers's upper-body strength and "hand weakness and poor fine manipulation" had improved. It does not appear from these records that Obeng-Myers was tested for musculoskeletal problems. There was no evidence that her joints or body parts were tested. It is also not evident whether the notations were based on observations or self-reported statements. Franklin's notes regarding musculoskeletal symptoms

and pain medication do not relate to the limitations identified by the State Agency physicians.

In its review, the court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached by the [ALJ] and whether substantial evidence exists to support it." *Randall*, 956 F.2d at 109. "Substantial evidence requires at least, in a word, *evidence*." *Schofield v. Saul*, No. 18-11390, 2020 WL 862430, at *3 (5th Cir. Feb. 21, 2020) (emphasis in original). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond*, 892 F.3d at 817 (internal quotation omitted).

The government has not cited any evidence in the record to support the ALJ's decision that Obeng-Myers could lift or carry twenty-five to fifty pounds as is required for "medium" work under 20 C.F.R. § 404.1567(c). As discussed, Exhibit 8F does not support the ALJ's RFC finding. During the hearing, Obeng-Myers testified that the most weight she could lift in her left arm was "at least ten." (Tr. 62.) Dr. Luu's consultative report states that Obeng-Myers complained that her "[p]ain [was] precipitated by . . . lifting [three] pounds." (Tr. 524.) The State Agency reviewing physicians reported that Obeng-Myers could lift only twenty pounds "occasionally" and ten pounds "frequently." (Tr. 45, 89, 119.) The only other reference to lifting or carrying is Obeng-Myers's June 2015 disability report

where she reported working several forty-hour-per-week jobs between 2004 and 2013 that required lifting up to ten pounds. (Tr. 285, 287–91.)

An ALJ's finding regarding a claimant's physical exertion abilities under 20 C.F.R. § 404.1567 must be supported by some evidence. *See Williams v. Astrue*, 355 F. App'x 828, 831–32 (5th Cir. 2009) (remanding for further proceedings where claimant's RFC limited her to "light" work despite no evidence that claimant could perform "light" work). The ALJ did not cite any evidence in the record to demonstrate that Obeng-Myers could "occasionally" lift or carry fifty pounds and could "frequently" lift or carry twenty-five pounds.

The government has also failed to cite any evidence in the record to support the ALJ's decision that Obeng-Myers could "frequently" perform gross and fine manipulation with her right hand. During the hearing, Obeng-Myers testified that she could hardly use her right hand and described her difficulties using a keypad and dialing a phone. (Tr. 62–64.) Dr. Luu's consultative reported noted decreased muscle strength and grip strength on Obeng-Myers's right side compared to her left side. (Tr. 44, 526.) Dr. Luu also found that Obeng-Myers did "not have good fine finger control to dexterous movements on the right." (Tr. 526.) The State Agency physicians recommended limiting Obeng-Myers to only "occasional" gross and fine manipulation with the right extremity based on "hand weakness and poor fine manipulation." (Tr. 90, 120.)

The ALJ cited only the "newer medical evidence" as his reasoning for discounting the medical evidence of Obeng-Myers's manipulation impairments. (Tr. 45.) But, again, there is nothing in Exhibit 8F pertaining to Obeng-Myers's ability to manipulate with her right hand or to contradict the medical evidence already before the State Agency physicians. The ALJ did not cite any evidence in the record to demonstrate that Obeng-Myers could perform "frequent" gross and fine manipulation with her right hand. The court therefore agrees with Obeng-Myers's assertion that substantial evidence does not support this finding.

Obeng-Myers also argues that the ALJ erred in rejecting the State Agency physicians' opinions and in failing to analyze the medical opinions as is required under the regulations. (D.E. 10 at 8–12.) The court agrees.

An ALJ must consider the findings of State Agency consultants according to 20 C.F.R. § 404.1527. 20 C.F.R. § 404.1513a(b) (2017). Under section 404.1527, the weight that an ALJ gives to medical sources is based on factors like the claimant's relationship with the provider and the supportability and consistency of the provider's opinion. 20 C.F.R. § 404.1527(c) (2017). "The ALJ cannot reject a medical opinion without an explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017). They must clearly disclose the evidence relied on in order for a court to conduct a substantial-evidence review of their determination. *Schofield*, 2020 WL 862430, at *3; *see Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)

(concluding that although "an exhaustive point-by-point discussion" is not required, the ALJ's analysis must make clear that their decision is based on substantial evidence).

The ALJ's decision does not contain any analysis of the section 404.1527(c) factors. In some cases, this court has found that the failure to explicitly weigh evidence using these factors can be harmless error. *See, e.g., Wilson v. Berryhill*, No. CV H-19-168, 2020 WL 889618, at *5 (S.D. Tex. Feb. 6, 2020), *adopted by* No. CV H-19-168, 2020 WL 883474 (S.D. Tex. Feb. 21, 2020); *Scherer v. Berryhill*, No. 4:18-CV-02621, 2019 WL 3548851, at *5–6 (S.D. Tex. Aug. 2, 2019). In those cases, despite the lack of any explicit weighing of the factors, the ALJ's analyses made clear the reasons for giving more or less weight to each medical opinion by expressly referencing the evidence that supported or undermined each relevant statement of the medical opinions. This case is different. Here, the ALJ did not explain what evidence specifically supported or undermined the opinion that Obeng-Myers could only lift up to twenty pounds or the opinion that she was limited to "occasional" hand manipulation. Without weighing the factors or clearly setting out the reasons for the ALJ's decision, the court cannot conduct the substantial-evidence review that is required. The government did not show that the ALJ properly weighed the medical opinions according to their

agency regulations. The court therefore agrees with Obeng-Myers's assertion that the ALJ erred in failing to analyze the medical opinions as the regulations require.

Remand for further proceedings is warranted if an ALJ may have reached a different conclusion in their disability determination absent an error. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Under the regulations, a finding at step four is based on the RFC determination. 20 C.F.R. § 404.1520(f) (2017). If substantial evidence does not support the RFC determination, the VE's "testimony, premised on such unsupported assessment, also cannot be considered as substantial evidence." *Browning v. Barnhart*, No. 1:01-CV-637, 2003 WL 1831112, at *8 (E.D. Tex. Feb. 27, 2003). The ALJ relied on the VE's testimony in finding that Obeng-Myers could return to her past work and was therefore not disabled. (Tr. 46–47.) The VE's testimony was based on hypothetical limitations based on the unsupported RFC. (Tr. 75–79.) The court must therefore remand to allow the ALJ to reconsider the RFC and seek testimony from the VE if there is a change in the RFC determination.

### 5. Conclusion

The court's review of the administrative record reveals that substantial evidence does not support the ALJ's RFC finding. The ALJ's finding that Obeng-Myers could perform her past relevant work thus constituted reversible error. The

court REMANDS this case to the ALJ for further consideration consistent with this opinion.

A separate final judgment will be entered.

Signed at Houston, Texas on March 5, 2020.

_____
Peter Bray
United States Magistrate Judge